GEORGEA BLACK McKINLEY *v.* JOHN H. HILLIARD
ET AL

5-5185                                     454 S. W. 2d 67

Opinion delivered April 27, 1970
[Rehearing denied June 22, 1970.]

*H. B. Stubblefield,* for appellant.

*John Moncrief,* for appellees.

CONLEY BYRD, Justice. Appellant Georgea Black McKinley, as the owner of E½ Sec. 26, T. 7 S, R. 3 W, brought this action against appellees John H. and Nell E. Hilliard, together with their tenants and contractees, to prevent an alleged encroachment along appellant's eastern boundary. Appellees, as the owners of W½ NW¼ and N½ SW¼ of Sec. 25, T. 7 S, R. 3 W, defended on the basis that the former owners of the two tracts had recognized and had acquiesced in a painted yellow line surveyed and marked by a former county surveyor, F. M. Quertermous, for appellant's father and predecessor in title. At issue between the parties is a triangular three acre piece of property commencing at zero at the northern terminus of the common boundary and increasing in size until it reaches some 80 feet in width at the southern terminus of appellees' property.

The Chancellor found the issues for appellees and dismissed appellant's complaint. For reversal appellant contends:

1. The lower Court's decree does not locate or identify the line in dispute; and

2. The evidence shows the true dividing line to be as established by L. C. Keefe.

The record shows that L. C. Keefe, appellant's surveyor, made his survey using a transit and plumb bob on his chaining. He commenced his survey on the range line between township two and three and surveyed 5361.1 feet west to an iron stob at the northeast corner of section 26 and the northwest corner of section 25. This was 17.7 feet over the 80.96 chains shown on the original government plat. Mr. Keefe found no monument at the southeast corner of section 26 so he measured west a distance of 5336.8 feet from the range line, being the distance shown on the U. S. Government plat as the distance across the southern boundary of section 25, to find the southwest corner of the N½ SW¼ of section 25. When Mr. Keefe con-

nected his two points, he determined that the common boundary between sections 25 and 26 from north to south ran 15 minutes east of south in reference to the range line.

Appellee John H. Hilliard and a number of other witnesses testified that appellant's father caused F. M. Quertermous, the County Surveyor, to survey the lands in 1934 and to mark the boundary lines with yellow paint. Charles F. Mattmiller testified that a copy of the Quertermous survey now in his possession had been delivered to his father in 1935 by appellant's father and that prior to World War II he assisted his father in maintaining and repainting the yellow line. The copy of the plat certifies that Quertermous established the corners shown on the plat and that the lines were painted yellow.

We agree with the trial court that the Keefe survey leaves much to be desired. He readily admitted that his survey of the boundary between sections 25 and 26 did not line up with his survey of the common boundary between sections 23 and 24 immediately to the north. His explanation of the variation between the two lines was that it is not accepted land surveying practices to determine lines and points in a section to the south by a line run from a point in a section to the north. If Mr. Keefe had corroborated his testimony in this respect *as to the particular boundary in controversy* by reference to field notes in the County Court House, the State Land Office in Little Rock or the General Land Office in Washington, D. C., his testimony would be much more persuasive. Otherwise the probative value of Mr. Keefe's testimony is somewhat destroyed by his admission that his plumb bob method of chaining was of such accuracy that he found overages on every measurement made. The question arises as to why he found no overage on the south line across section 25.

In *Clark on Surveying and Boundaries, 3rd* § 9, the surveyor's function is stated in this language:

"As has been pointed out heretofore it is not the surveyor's responsibility to set up new lines except where he is surveying heretofore unplatted land or subdividing a new tract. Where title to land has been established under a previous survey, the surveyor's duty is to solely locate the lines of the original survey. He cannot establish a new corner, nor can he even correct erroneous surveys of earlier surveyors. He must track the footsteps of the first."

Prior sections in Clark refer the reader to the Bible, Deuteronomy 19:14 and 27:17.

The order of importance of guides to the location of boundaries is stated in *Ewart* v. *Squire,* (4th Cir. 1916), 239 F. 34, in this language:

"In ascertaining location the guides in the order of importance are: (1) Natural objects; (2) artificial objects; (3) adjacent boundaries; (4) courses; (5) distances; (6) quantity. But the rule is flexible, and it does not control against the intention of the parties as shown by the description taken as a whole. . . . The order of the importance of the guides is manifestly the more flexible when the description of subdivisions of a tract is ascertained by protraction and not by actual survey."

Under the circumstances here involved, it appears that appellant's surveyor not only disregarded the evidence of earlier surveys, but also gave no importance at all to courses over distances in trying to retrace the steps of the original surveyors. Therefore upon the whole record, we cannot say that the Chancellor's refusal to follow the Keefe survey is contrary to the weight of the evidence.

Neither do we find any merit in appellant's argument that the trial court erred in fixing the boundary along the line of the Quertermous survey. Contrary to appellant's argument, the Quertermous survey shows that the boundary is tied to adjacent boundaries and

other artificial monuments sufficient to locate the common boundaries between sections 25 and 26—*i. e.*, assuming that such boundaries and monuments still exist and there is nothing in the record to show the contrary.

Affirmed.